**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| MARYLAND OFFICE OF PEOPLE'S COUNSEL, NEW JERSEY DIVISION OF RATE COUNSEL, ILLINOIS OFFICE OF THE ATTORNEY GENERAL<br>*Petitioners*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF ENERGY and CHRIS WRIGHT, Secretary, UNITED STATES DEPARTMENT OF ENERGY<br>*Respondents*. | Petition For Review<br><br>CASE NO. 25-1287 |

**PETITION FOR REVIEW**

Pursuant to Section 313(b) of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l*(b), and Fed. R. App. P. 15(a), the Illinois Office of Attorney General ("Illinois OAG"), Maryland Office of People's Counsel ("MPC") and the New Jersey Division of Rate Counsel ("Rate Counsel") (collectively, "Joint Consumer Advocates") hereby petition this court for review of Order No. 202-25-8 issued by Chris Wright, Secretary, United States Department of Energy, and the United States Department of Energy ("DOE" or the "Commission"), which was issued on August 28, 2025, (the "Eddystone Order" or "Order"). DOE issued the Eddystone Order pursuant to section 202(c) of the Federal Power Act, 16 U.S.C. § 824a(c). Section 202(c) powers are delegated to the Secretary of Energy.

Therefore, the rehearing and judicial review provisions of 16 U.S.C. § 825*l* apply to the Eddystone Order.[1]

The jurisdiction and venue of this Court are established by FPA, Section 313(b), 16 U.S. 825*l*(b). Petitioners, Illinois OAG, MPC, and Rate Counsel, along with the Delaware Division of Public Advocate and Illinois Citizens Utility Board, all intervenors in the underlying proceeding, jointly and timely filed a request for rehearing, dated September 26, 2025, of the Order. That rehearing request was deemed denied by operation of law for lack of action within thirty days of receipt of the rehearing request on October 28, 2025.[2] Therefore, Petitioners may file this petition for review under 16 U.S.C. § 825*l*(b). Copies of the Order and Notice are attached to this petition as Exhibits A and B, respectively.

MPC is the statutory representative of the residential ratepayers of utility services in Maryland. Pursuant to Maryland Public Utility Companies Code Annotated, Section 2-205(b), the People's Counsel "may appear before any federal or state entity as necessary to protect the interests of residential . . . users of [gas, electricity or other regulated services]." MPC has participated in numerous

[1] *See* 42 U.S.C. § 7192(a) ("Judicial review of agency action taken under any law the functions of which are vested by law in, or transferred or delegated to the Secretary [of Energy] . . . shall, notwithstanding such vesting, transfer, or delegation, be made in the manner specified in or for such law.").
[2] *See* Exhibit B, "Notice of Denial of Law of Rehearing," United States Department of Energy (Aug. 1, 2025); 16 U.S.C. § 825*l*(a); *Allegheny Def. Project v. FERC*, 964 F.3d 1, 18–19 (D.C. Cir. 2020).

regulatory proceedings—including the DOE proceeding at issue here—at the federal and state levels and in state and federal civil court appeals of those proceedings.

Rate Counsel was authorized by the New Jersey Legislature to, among other things, "represent the public interest in any federal proceeding."[3]

The Illinois Office of Attorney General represents the People of the State of Illinois and their interest in receiving reliable electric services at the least possible cost. Illinois law provides that the Illinois Attorney General "shall have the power and duty on behalf of the people of the State to intervene in, initiate, enforce, and defend all legal proceedings on matters relating to the provision, marketing, and sale of electric . . .  service whenever the Attorney General determines that such action is necessary to promote or protect the rights and interests of all Illinois citizens, classes of customers, and users of electric . . . services."[4] In addition to this investigative and enforcement authority, the Illinois Attorney General "shall be a party as a matter of right to all proceedings, investigations, and related matters involving the provision of electric . . . services before the Illinois Commerce Commission, the courts, and other public bodies."[5] The Illinois Attorney General's office represents Illinois ratepayers in PJM's ComEd Zone who have a significant

[3] N.J.S.A. § 52:27EE-55.
[4] 15 ILCS 205/6.5(c).
[5] *Id.* at 6.5(d).

interest in resource adequacy and maintaining reliable service at least possible cost that is materially affected by the outcome of this proceeding.[6]

Joint Consumer Advocates have standing to bring this appeal because the ultimate outcome of this proceeding will have a material financial impact on Illinois, Maryland, and New Jersey residential ratepayers. The DOE mandated retainment of the Eddystone Units affects the PJM wholesale electric energy prices. Residential ratepayers in Illinois, Maryland, and New Jersey will contribute to any rate recovery Eddystone requests for continued operation in the PJM-system-operator organized and administered wholesale electric markets.

Joint Consumer Advocates respectfully request that this Court hold unlawful, vacate, and set aside the Eddystone Order, and grant such further relief as may be deemed just and proper.

[*signature page follows*]

[6] *See* PJM Open Access Transmission Tariff, Attachment J, PJM Transmission Zones, https://agreements.pjm.com/oatt/4443.

Respectfully submitted,

**MARYLAND OFFICE OF PEOPLE'S COUNSEL**

DAVID S. LAPP
PEOPLE'S COUNSEL

/s/ William F. Fields
William Fields
Deputy People's Counsel

Alexis H. Lewis
Assistant People's Counsel

Davids.lapp@maryland.gov
William.fields@maryland.gov
Alexis.lewis@maryland.gov
Office of People's Counsel
6 St. Paul Street, Suite 2102
Baltimore, Maryland 21202
(410) 767-8150

**NEW JERSEY DIVISION OF RATE COUNSEL**
Brian O. Lipman, Esq., Director

_/s/David Wand________________
T. David Wand, Esq.
**Deputy Rate Counsel**
New Jersey Division of Rate Counsel
140 East Front Street, 4th Floor
P.O. Box 003
Trenton, NJ 08625
Phone: (609) 984-1460
blipman@rpa.nj.gov
dwand@rpa.nj.gov
rglover@rpa.nj.gov
dlayugan@rpa.nj.gov

**ILLINOIS OFFICE OF THE ATTORNEY GENERAL**

/s/ Jason E. James
Jason E. James

Assistant Attorney General
Illinois Office of the Attorney General
Kimberly Janas
Counsel to the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Ph: (217) 843-0322
Email: jason.james@ilag.gov

## CORPORATE DISCLOSURE STATEMENT OF PETITIONERS

**Maryland Office of People's Counsel** is a governmental entity that does not issue any stock and thus is not subject to the corporate disclosure statement requirement of Rule 26.1 of the Federal Rules of Appellate Procedure.

**New Jersey Division of Rate Counsel** is a governmental entity that does not issue any stock and thus is not subject to the corporate disclosure statement requirement of Rule 26.1 of the Federal Rules of Appellate Procedure.

**Illinois Office of the Attorney General** is a governmental entity that does not issue any stock and thus is not subject to the corporate disclosure statement requirement of Rule 26.1 of the Federal Rules of Appellate Procedure.

Respectfully submitted,

**MARYLAND OFFICE OF PEOPLE'S COUNSEL**

DAVID S. LAPP
PEOPLE'S COUNSEL

/s/ William F. Fields
William Fields
Deputy People's Counsel

Alexis H. Lewis
Assistant People's Counsel

Davids.lapp@maryland.gov
William.fields@maryland.gov
Alexis.lewis@maryland.gov

Office of People's Counsel
6 St. Paul Street, Suite 2102
Baltimore, Maryland 21202
(410) 767-8150

**NEW JERSEY DIVISION OF RATE COUNSEL**
Brian O. Lipman, Esq., Director

_/s/David Wand_________________
T. David Wand, Esq.
**Deputy Rate Counsel**
New Jersey Division of Rate Counsel
140 East Front Street, 4th Floor
P.O. Box 003
Trenton, NJ 08625
Phone: (609) 984-1460
blipman@rpa.nj.gov
dwand@rpa.nj.gov
rglover@rpa.nj.gov
dlayugan@rpa.nj.gov

**ILLINOIS OFFICE OF THE ATTORNEY GENERAL**

/s/ Jason E. James
Jason E. James

Assistant Attorney General
Illinois Office of the Attorney General
Kimberly Janas
Counsel to the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Ph: (217) 843-0322
Email: jason.james@ilag.gov

## CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Fed. R. App. P., I hereby certify that on December 18, 2025, an electronic copy of the foregoing Petition was filed with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, and service was accomplished on all parties on the service list for Order 202-25-8 (Attachment A) via email and first-class mail:

Respectfully submitted,

/s/ Alexis H. Lewis
Alexis H. Lewis

Assistant People's Counsel
Office of People's Counsel
6 St. Paul Street, Suite 2102
Baltimore, Maryland 21202
(410) 767-8171
D.C. Circuit Bar #66403
alexis.lewis@maryland.gov

ATTACHMENT A
SERVICE LIST

Caroline Reiser
Simi Bhat
Gavin McCabe
Natural Resources Defense Council
1152 15th Street NW, Suite 300 89
Washington, DC 20005
creiser@nrdc.org
sbhat@nrdc.org
gmccabe@nrdc.org
(202) 717-8341

Ted Kelly
Tomás Carbonell
Environmental Defense Fund
555 12th St. NW, #400
Washington, DC 20004
tekelly@edf.org
tcarbonell@edf.org
(202) 387-3500

Jessica O'Neill
PennFuture
1429 Walnut Street, Suite 701
Philadelphia, PA 19102
oneill@pennfuture.org

Francis W. Sturges, Jr.
Danielle Fidler
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
fsturges@catf.us
dfidler@catf.us
(617) 624-0234
*Counsel for Citizens for Pennsylvania's Future*

Tyson Slocum
Public Citizen, Inc.
215 Pennsylvania Ave SE
Washington, DC 20003
(202) 454-5191
tslocum@citizen.org

Gregory E. Wannier
Sanjay Narayan
Sierra Club Environmental Law Program
2101 Webster St., Ste 1300
Oakland, CA 94612
greg.wannier@sierraclub.org
sanjay.narayan@sierraclub.org
(415) 977-5646

Brian O. Lipman, Esq.
Emily Lam, Esq.
T. David Wand, Esq.
Robert Glover, Esq.
New Jersey Division of Rate Counsel
140 East Front Street, 4th Floor
P.O. Box 003 Trenton, NJ 08625
(609) 984-1460
elam@rpa.nj.gov
dwand@rpa.nj.gov
blipman@rpa.nj.gov
rglover@rpa.nj.gov

David Crumplar, Deputy Attorney General
8820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
David.Crumplar@delaware.gov
*Attorney for the Delaware Division of the Public Advocate*

ATTACHMENT A
SERVICE LIST

Susan L. Satter, Chief, Public Utilities Bureau
Kimberly B. Janas, Counsel to the Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street, 25th Floor
Chicago, IL 60603

Eric DeBellis, General Counsel
Illinois Citizens Utility Board
309 West Washington Street Suite 800
Chicago, IL 60606
edebellis@citizensutilityboard.org

# EXHIBIT A

# ORDER

**Department of Energy**
Washington, DC 20585

**Order No. 202-25-8**

Pursuant to the authority vested in the Secretary of Energy by section 202(c) of the Federal Power Act (FPA), 16 U.S.C. § 824a(c), and section 301(b) of the Department of Energy Organization Act, 42 U.S.C. § 7151(b), and for the reasons set forth below, I hereby determine that an emergency exists in the PJM Interconnection, L.L.C. (PJM) region due to a shortage of facilities for the generation of electric energy, resource adequacy concerns, and other causes. Issuance of this Order will meet the emergency and serve the public interest.

*Order No. 202-25-4*

The Eddystone Generating Station is a power plant owned by Constellation Energy Corporation (Constellation Energy) and located in Eddystone, PA. Units 3 and 4 (Eddystone Units), each with 380 MW of generation capacity, are subcritical steam boiler-turbine generator units that can run on either natural gas or oil, depending on market conditions. The Eddystone Units were initially scheduled for retirement on May 31, 2025.

Order No. 202-25-4, issued pursuant to FPA section 202(c), required that the Eddystone Units remain in operation for 90 days, until August 28, 2025. That order was based on my determination that emergency conditions existed in the PJM region. I explained that there was a potential shortage of electric energy and shortage of facilities for generation of electric energy. I stated that the potential loss of power to homes and local businesses presents a risk to public health and safety. I determined that the operational availability and economic dispatch of the Eddystone Units is necessary to best meet the emergency and serve the public interest. My determination was based on a number of different facts.

First, in congressional testimony, PJM's president and CEO recently stated that its system faces a "growing resource adequacy concern" due to load growth, the retirement of dispatchable resources, and other factors.[1] He stated that, through 2030, PJM anticipates reliability risk from increasing electricity demand, generator retirement outpacing new resource construction, and characteristics of resources in PJM's interconnection queue.[2] Upcoming retirements, including the planned retirement of the Eddystone Units, would exacerbate these resource adequacy issues.

---

[1] *Keeping the Lights On: Examining the State of Regional Reliability,* Before the *H. Comm. on Energy and Com., S. Comm. on* Energy, 119th Cong. (Mar. 25, 2025) (testimony of Mr. Manu Asthana, President and CEO of PJM Interconnection) (Asthana Test.) at 4-5, available at https://www.congress.gov/119/meeting/house/118040/witnesses/HHRG-119-IF03-Wstate-AsthanaM-20250325.pdf.
[2] *Id.*

Second, PJM indicated that resource constraints could exist within its service territory under peak load conditions, stating that "available generation capacity may fall short of required reserves in an extreme planning scenario."[3] In its February 2023 assessment "*Energy Transition in PJM: Resource Retirements, Replacements & Risks* (Four Rs Report)," PJM highlighted increasing reliability risks in the coming years due to the "potential timing mismatch between resource retirements, load growth and the pace of new generation entry" under "low new entry" scenarios for renewable generation.[4]

Third, in December 2024, PJM filed revisions with the Federal Energy Regulatory Commission (FERC) to Part VII of its Open Access Transmission Tariff, known as the Reliability Resource Initiative (RRI), to address near-term resource adequacy concerns. In a February 2025 order, FERC accepted the revisions and found "the possibility of a resource adequacy shortfall driven by significant load growth, premature retirements, and delayed new entry."[5]

*Continuing Emergency Conditions*

The emergency conditions that led to the issuance of Order No. 202-25-4 continue, both in the near and long term. The summer season has not yet ended, and the production of electricity from the Eddystone Units will continue to be critical to maintaining reliability in PJM this summer. This need is evidenced by the fact that the Eddystone Units were called on by PJM to generate electricity during heat waves that hit the region in June and July.

According to U.S. Environmental Protection Agency data, the Eddystone Units generated over 17,000 MWhs during the month of June.[6] Further, over a period of hot weather from June 23 to June 26, Unit 3 ran for a total of 65 hours and Unit 4 ran for a total of 59 hours.[7] During a hot weather period from July 28 to July 30, Unit 3 ran for 39 hours and Unit 4 ran 8 hours.[8]

Over the course of the summer, PJM has issued Hot Weather Alerts and/or Maximum Generation Alerts (EEA 1) covering a total of 20 days, including days in June, July, and August.[9] The hot weather may continue in the near term, as the Seasonal Outlook released by the National Oceanic and Atmospheric Administration (NOAA) on August 21, 2025, projects between a 40%

---

[3] *PJM Summer Outlook 2025: Adequate Resources Available for Summer Amid Growing* Risk, PJM Interconnection, L.L.C. (May 9, 2025), https://insidelines.pjm.com/pjm-summer-outlook-2025-adequate-resources-available-for-summer-amid-growing-risk/.

[4] *Energy Transition in PJM: Resource Retirements, Replacements & Risks,* PJM (Four Rs Report) at 1, (Feb. 24, 2023), https://www.pjm.com/-/media/DotCom/library/reports-notices/special-reports/2023/energy-transition-in-pjm-resource-retirements-replacements-and-risks.ashx.

[5] *PJM Interconnection, L.L.C.*, 190 FERC ¶ 61,084 (2025).

[6] *See Custom Data Download, EPA CAMPD* (Clean Air Markets Program Data), https://campd.epa.gov/data/custom-data-download (search criteria Emissions >> Monthly >> Unit (default) >>Apply >>"2025" and "June" (search date Aug. 22, 2025).

[7] *See PJM daily reports to DOE under Order No. 202-25-4, June 24-27, 2025.*

[8] *See PJM daily reports to DOE under Order No. 202-25-4, July 29-31, 2025.*

[9] *See* PJM Emergency Procedures Postings for the period between June 1 and August 31, *Emergency Procedures*, https://emergencyprocedures.pjm.com/ep/pages/dashboard.jsf (search range set to: effective from 06/01/2025 until 08/31/2025).

and 60% probability of above-normal temperatures in the Mid-Atlantic region, which includes the PJM region, over the next three calendar months.[10]

The evidence also indicates that there is a potential longer term resource adequacy emergency in the PJM region.

In its news release expressing support for Order No. 202-25-4, PJM explained that it has "repeatedly documented and voiced its concerns over the growing risk of a supply and demand imbalance driven by the confluence of generator retirements and demand growth. Such an imbalance could have serious ramifications for reliability and affordability for consumers."[11]

PJM has indeed voiced these concerns for years. In its February 2023 Four Rs Report, PJM cautioned that 40 GW of thermal generation are at risk of retirement by 2030.[12] PJM also noted that, while there were then 290 GW of renewable generation capacity in the PJM interconnection queue, historically, the rate of completion for renewable projects is approximately five percent.[13] PJM determined that the pace of new capacity additions "would be insufficient to keep up with expected retirements and demand growth by 2030."[14] PJM estimated that, depending on the pace of new capacity additions, reserve margin erosion would occur between 2026 and 2028.

More recently, in its December 2024 RRI filing with FERC, PJM stated that "[c]oncerns about resource adequacy . . . have only increased since the Four Rs Report . . . ."[15] PJM warned that its "resource adequacy concerns are increasing at an extraordinary pace."[16] PJM went on to explain, its "resource adequacy concerns are driven in large part by significant load growth caused by, among other things, large data centers" and that its preliminary analysis shows "substantial increases [in load additions] since the 2024 forecast" for both the summer and winter seasons.[17] According to PJM, "load growth and generator retirements are significantly outpacing the entry of new generation in the PJM Region with this trend expected to continue unabated based on all available evidence."[18] Although the RRI process will help expedite the construction of needed

---

[10] *Seasonal Outlook*, NOAA Climate Prediction Ctr., (Aug. 21, 2025), https://www.cpc.ncep.noaa.gov/products/predictions/long_range/seasonal.php?lead=1.
[11] *PJM Statement on the U.S. Department of Energy 202(c) Order of May 30*, PJM (May 31, 2025), https://www.pjm.com/-/media/DotCom/about-pjm/newsroom/2025-releases/20250531-doe-202c-statement-to-defer-retirements-of-certain-generators.pdf.
[12] Four Rs Report, *supra* n. 4, at 2.
[13] *Id.*
[14] *Id.* at 16, Table 1.
[15] *PJM Interconnection, L.L.C.*, FERC Docket No. ER25-712, Tariff Revisions for Reliability Resource Initiative at 10 (Dec. 13, 2024).
[16] *Id.*
[17] *Id.* at 10-11. *See also id.* at 13 ("the exponential load growth resulting from development of new data centers and the intense energy needs of Artificial Intelligence technology overshadows any relaxation in the pace of fossil fuel generation retirements…").
[18] *Id.* at 14.

new capacity, it is unlikely to result in the addition of any new generation capacity in the next few years.[19]

In support of the RRI filing, PJM submitted an affidavit from Donald Bielak, PJM's Director, Interconnection Planning. Mr. Bielak characterized the increase in forecasted load growth throughout PJM as "extraordinary" and "unprecedented," stating that it "could not have been foreseen as recently as a year ago."[20] Mr. Bielak expressed the opinion that the "rapid" retirement of thermal generation resources, "extreme" forecasted load growth, and "delays in new generation resources achieving commercial operation," would adversely affect resource adequacy throughout PJM's electricity grid.[21]

The North American Electric Reliability Corporation (NERC) has raised similar concerns. According to NERC's 2024 Long Term Reliability Assessment, "PJM could face future resource adequacy challenges, impacting system reliability and PJM's ability to serve load."[22] NERC assessed the PJM region at an elevated risk starting in 2026,[23] explaining that "[r]esource additions are not keeping up with generator retirements and demand growth."[24] NERC stated that the loss-of-load hour (LOLH) and expected unserved energy (EUE) risks are concentrated in the winter months (especially January), in both 2026 and 2028.[25]

Order 202-25-4 was preceded by executive orders on January 20, 2025, and April 8, 2025, in which President Donald J. Trump underscored the dire energy challenges facing the Nation due to growing resource adequacy concerns. Specifically, in Executive Order 14262, "Strengthening the Reliability and Security of the United States Electric Grid," President Trump emphasized that "the United States is experiencing an unprecedented surge in electricity demand driven by rapid technological advancements, including the expansion of artificial intelligence data centers and increase in domestic manufacturing."[26] President Trump likewise recognized, in Executive Order 14156, "Declaring a National Energy Emergency," that the "United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy."[27] The Executive Order adds: "Hostile state and non-state foreign actors have targeted our domestic energy infrastructure,

[19] *See id.*, Attachment C (Affidavit of Mr. Donald Bielak) ¶ 18-19 (explaining that projects studied in Transition Cycle #2, which includes RRI projects, "could be constructed and in commercial operation by the 2029/30 Delivery Year or sooner.").
[20] *Id.* at 12.
[21] *Id.* at 7.
[22] *2024 Long-Term Reliability Assessment*, North American Electric Reliability Corporation at 92 (Dec. 2024), https://www.nerc.com/pa/RAPA/ra/Reliability%20Assessments%20DL/NERC_Long%20Term%20Reliability%20Assessment_2024.pdf at 92.
[23] *Id.* at 4.
[24] *Id.* at 7.
[25] *Id.* at 91-92.
[26] Executive Order No. 14262, 90 Fed. Reg. 15521 (Apr. 8, 2025) (Strengthening the Reliability and Security of the United States Electric Grid), https://www.whitehouse.gov/presidential-actions/2025/04/strengthening-the-reliabilityand-security-of-the-united-states-electric-grid/.
[27] Executive Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025) (Declaring a National Energy Emergency), https://www.whitehouse.gov/presidential-actions/2025/01/declaring-a-national-energy-emergency/.

weaponized our reliance on foreign energy, and abused their ability to cause dramatic swings within international commodity markets."[28]

The Department of Energy's (Department) July 2025 Resource Adequacy Report: Evaluating the Reliability and Security of the United States Electric Grid, issued pursuant to the President's directive in Executive Order 14262, details the myriad challenges affecting the Nation's energy outlook. It concludes, "Absent decisive intervention, the Nation's power grid will be unable to meet projected demand for manufacturing, re-industrialization, and data centers driving artificial intelligence (AI) innovation."[29] The prolific growth of data centers for the development of AI, as well as their immense energy needs, presents a new and unexpected source of load growth. For example, PPL Electric Utilities has 11.7 GW of advanced data center requests in Pennsylvania through to 2030.[30] As of December 2024, Dominion Energy has 40.2 GW of contracted data center capacity, which is an 18.2 GW increase over the amount from July 2024, an approximately 88% increase.[31] Regarding the PJM region, the Department's analysis performed this year in collaboration with the national labs modeled the effects of approximately 25 GW of load growth in PJM, of which 15 GW came from data centers, as well as approximately 17 GW of announced coal, gas, and oil generation retirements.[32] Under these assumptions, the model estimated approximately 430.3 loss of load hours in an average weather year. Under worst weather year assumptions, the model estimated 1,052 loss of load hours and a max unserved load hours of approximately 21.335 GW.[33]

Grid operators, including PJM, have likewise acknowledged the Nation's current energy crisis. For instance, during a March 25, 2025, hearing before the United States House of Representatives Committee on Energy and Commerce, Manu Asthana, President and CEO, PJM, testified that there was a "growing resource adequacy concern . . . impacting a significant part of our country."[34] Mr. Asthana explained that the "rate of electricity demand is anticipated to increase significantly in the future due to development of large data centers in the PJM service Area . . . [and] increases in demand coming from the transportation and heating sectors and from industrial growth."[35] Mr. Asthana noted that, "though various reforms instituted by PJM had succeeded in bringing new generation online and preventing the retirement of existing units, supply conditions within PJM are still tightening." Therefore, Mr. Asthana stated that PJM

---

[28] *Id.*
[29] *See also* Resource Adequacy Report: Evaluating the Reliability and Security of the United States Electric Grid, U.S. Department of Energy (July 2025), at 1, https://www.energy.gov/sites/default/files/2025-07/DOE%20Final%20EO%20Report%20%28FINAL%20JULY%207%29.pdf.
[30] *See PPL Corporation Q2 2025 Investor Update*, PPLC Corporation (July 31, 2025) at 7, https://filecache.investorroom.com/mr5ir_pplweb2/1245/PPL_2025_Q2_Investor_Update_vFINAL.pdf
[31] *See* Dominion Energy Virginia, Q4 2024 Earnings Call (Feb. 12, 2025), at 18, https://s2.q4cdn.com/510812146/files/doc_financials/2024/q4/2025-02-12-DE-IR-4Q-2024-earnings-call-slides-vTCII.pdf.
[32] *Resource Adequacy Report: Evaluating the Reliability and Security of the United States Electric Grid*, U.S. Department of Energy (July 2025), at 28, https://www.energy.gov/sites/default/files/2025-07/DOE%20Final%20EO%20Report%20%28FINAL%20JULY%207%29.pdf.
[33] *Id.* at 27.
[34] Asthana Test. at 4.
[35] *Id.*

"encourage[s] all generation owners who have signaled an intent to retire their units to reconsider their decision to support resource adequacy and grid reliability."[36]

*ORDER*

FPA section 202(c)(1) provides that whenever the Secretary of the Department of Energy determines "that an emergency exists by reason of a sudden increase in the demand for electric energy, or a shortage of electric energy or of facilities for the generation or transmission of electric energy," then the Secretary has the authority "to require by order . . . such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest."[37] This statutory language constitutes a specific grant of authority to the Secretary to require the continued operation of the Eddystone Units when the Secretary has determined that such continued operation will best meet an emergency caused by a sudden increase in the demand for electric energy or a shortage of generation capacity.

Such is the case here. As described above, the emergency conditions resulting from increasing demand and accelerated retirements of generation facilities supporting the issuance of Order No. 202-25-4 will continue in the near term and are also likely to continue in subsequent years. This could lead to the potential loss of power to homes and local businesses in the areas that may be affected by curtailments or outages, presenting a risk to public health and safety. Given the responsibility of PJM to identify and dispatch generation necessary to meet load requirements, I have determined that, under the conditions specified below, continued additional dispatch of the Eddystone Units is necessary to best meet the emergency and serve the public interest under FPA section 202(c).

To ensure the Eddystone Units will be available if needed to address emergency conditions, the Eddystone Units shall remain in operation until November 26, 2025.[38]

Based on my determination of an emergency set forth above, I hereby order:

A. From 5:03PM EDT on August 28, 2025, PJM and Constellation Energy shall take all measures necessary to ensure that the Eddystone Units are available to operate. For the duration of this Order, PJM is directed to take every step to employ economic dispatch of the Eddystone Units to minimize cost to ratepayers. Constellation Energy is directed to comply with all orders from PJM related to the availability and dispatch of the Eddystone Units.

B. To minimize adverse environmental impacts, this Order limits operation of dispatched units to the times and within the parameters as determined by PJM pursuant to paragraph A. PJM shall provide a daily notification to the Department (via AskCR@hq.doe.gov) reporting whether the Eddystone Units has operated in

---

[36] *Id*. at 10.

[37] Although the text of FPA section 202(c) grants this authority to "the Commission," section 301(b) of the Department of Energy Organization Act transferred this authority to the Secretary of the Department of Energy. *See* 42 U.S.C. § 7151(b) (2018).

[38] 16 U.S.C. § 824a(c)(4).

compliance with the allowances contained in this Order.

C. All operation of the Eddystone Units must comply with applicable environmental requirements, including but not limited to monitoring, reporting, and recordkeeping requirements, to the maximum extent feasible while operating consistent with the emergency conditions. This Order does not provide relief from any obligation to pay fees or purchase offsets or allowances for emissions that occur during the emergency condition or to use other geographic or temporal flexibilities available to generators.

D. By September 12, 2025, PJM is directed to provide the Department of Energy (via AskCR@hq.doe.gov) with information concerning the measures it has taken and is planning to take to ensure the operational availability of the Eddystone Units consistent with this Order. PJM shall also provide such additional information regarding the environmental impacts of this Order and its compliance with the conditions of this Order, in each case as requested by the Department of Energy from time to time.

E. Constellation Energy is directed to file with the Federal Energy Regulatory Commission Tariff revisions or waivers to effectuate this Order. Rate recovery is available pursuant to 16 U.S.C. § 824a(c).

F. This Order shall not preclude the need for the Eddystone Units to comply with applicable state, local, or Federal law or regulations following the expiration of this Order.

G. Because this Order is predicated on the shortage of facilities for generation of electric energy and other causes, the Eddystone Units shall not be considered capacity resources.

H. This Order shall be effective from 5:03 PM Eastern Daylight Time (EDT) on August 28, 2025, and shall expire at 00:00 EST on November 26, 2025, with the exception of applicable compliance obligations in paragraph D.

I. Issued in Washington, D.C., at 7:11 PM Eastern Daylight Time on this 27th day of August 2025.

Chris Wright

Chris Wright
Secretary of Energy

cc: **FERC Commissioners**
Chairman David Rosner
Commissioner Lindsay S. See
Commissioner Judy W. Chang

**Pennsylvania Public Utility Commissioners**
Chairman Stephen M. DeFrank
Vice Chair Kimberly M. Barrow
Commissioner Kathryn L. Zerfuss
Commissioner John F. Coleman, Jr.
Commissioner Ralph V. Yanora

# EXHIBIT B

# NOTICE

**UNITED STATES OF AMERICA**
**Department of Energy**
Washington, DC 20585

PJM Interconnection, L.L.C.
and Constellation Energy Corporation
Regarding the Eddystone Generating Station

Order No. 202-25-8A

# NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND PROVIDING FOR FURTHER CONSIDERATION

(October 28, 2025)

Rehearing has been timely requested of the Department of Energy's order issued on August 28, 2025, in the above-captioned matter.[1] Thirty (30) days having passed from the date on which rehearing requests were filed, the requests for rehearing are deemed denied by operation of law.[2]

As provided in 16 U.S.C. § 825*l*(a) and 16 U.S.C. § 824a(c), the requests for rehearing of the above-cited order may be addressed in a future order.[3]

Chris Wright

Chris Wright
Secretary of Energy

[1] *PJM Interconnection, L.L.C., and Constellation Energy Corp.*, Order No. 202-25-8 (2025) (regarding the Eddystone Generating Station).
[2] 16 U.S.C. § 825*l*(a).
[3] 16 U.S.C. § 825*l*(a) (DOE may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper); 16 U.S.C. § 824a(c) (DOE may issue a supplemental order).